All right, 21-30-47 Smallwood v. Williams Hello, Ms. Dillard, Ms. Dillard, Ms. Dillard, Good morning, Judge Robner. Good morning, Your Honors. My name is Rosalin Dillon and I represent Plaintiff Appellant Howard Smallwood. And I'm grateful to know I will have my rebuttal time reserved. The Prison Litigation Reform Act only requires prisoners to exhaust administrative remedies that are available. And this court has repeatedly held that in conducting an availability analysis, a prisoner's personal circumstances must be taken into account. Mr. Smallwood's personal circumstances are as follows. He has an IQ low enough to potentially disqualify him from the death penalty because it indicates a diminished capacity to understand information and to engage in logical reasoning. That mental impairment rendered the Indiana Department of Corrections' complex, multi-tiered grievance process unusable by him and is evinced by the fact that he has never, in his nearly two decades of incarceration at Pendleton, been able to exhaust administrative remedies. That should be the end of the matter. But even if his mental capacity were not enough on its own to make remedies unavailable to him, prison officials thwarted whatever chance he had at exhausting remedies when they threw him into segregation immediately following a traumatic forced blood draw and sexual assault away from anybody who could have potentially helped him. Defendants don't contest Mr. Smallwood's personal circumstances, nor do they offer evidence that the prison took any steps to follow its own rules, which mandate that the prison must put mechanisms in place to ensure that individuals with mental impairments can Because this court has squarely held that availability hinges on whether a prisoner, through no fault of his own, cannot access a grievance process, the district court was wrong to dismiss Mr. Smallwood's case for failure to exhaust administrative remedies. I'll begin with how this court typically addresses questions of whether something's available or not. In Ramirez v. Young, this court explicitly held that courts must, quote, account for individual capabilities when determining whether administrative remedies are available. And here, the burden was on defendants to show beyond dispute that remedies were not only available within the prison, but that Mr. Smallwood, with his low IQ, was actually capable of successfully using the process, and defendants simply haven't met that burden here. In fact, there's ample evidence in the record that the district court overlooked that Mr. Smallwood's mental capacity prevented him from understanding the process. First, he introduced evidence of a low IQ, which affected his ability to process information. Second, he informed the prison in an unrelated grievance appeal that, quote, I am not familiar with the policy and administrative process because I am incompetent to understanding the procedures. And third, Mr. Smallwood's history in the record really speaks for itself here. It doesn't show a single instance of, in a nearly two-decade period, of Mr. Smallwood successfully exhausting administrative remedies. And in fact, it has 18 unsuccessful attempts to even get grievances through the door. And nearly half of those were due to the same infirmity that Mr. Smallwood faced here, and that was the informal resolution requirement. And I'll note that the Indiana Department of Corrections Complex Grievance System didn't come out of thin air. It's the product of deliberate choice by the Indiana Department of Corrections. And as the brief submitted by Amici notes, it's 15 single-spaced pages long. It cross-references at least three different Indiana Department of Corrections policies. It requires the use of at least three different forms. And the rules themselves note that the system won't be usable by everybody, and that includes folks with mental impairments. And as this court has recognized, simply having a grievance process is not always enough. And based on the evidence here, it's clear that Mr. Smallwood could not avail himself of the system. And, you know, even if this ability were not enough on its own to render remedies unavailable to him, the prison all but ensured he couldn't properly navigate the system when he was thrown into segregation. Defendants don't dispute that he was thrown into segregation and remained there during the time it would have taken him to exhaust administrative remedies, nor do they dispute that those circumstances are not relevant to the availability analysis. What do we know about, in essence, how segregated, how isolated was the segregation here? We don't know much about it, Your Honor, but Mr. Smallwood asserted that when he was in segregation he was separated from those who could have helped him. And then he introduced into evidence the cell logs, or each grievance has a cell number on it, and each of those were in presumably what is a segregation unit. Did he have access while he was in segregation to the prison staff members with whom he was I'm not sure if he had access to the actual individuals who he was supposed to informally resolve the grievances with, but he presumably had access to someone because he did try to file a grievance while he was in segregation. The problem was it was returned to him as deficient because he hadn't made any informal attempts at resolving the grievance process. And Mr. Smallwood notes in his answer to defendant's motion for summary judgment that that's in needed to, in order to be able to informally resolve his complaint. And it's worth noting that that informal... Excuse me. Do you have any arguments at this point about whether his claim of sexual assault was filed within the statute of limitation, or do you think it needs to be remanded for factual development below? Yes, Judge Rovner. I think that the statute of limitations argument needs to be remanded for further factual development. And that's because the district court, as district courts often do, once it saw that there was the affirmative defense of exhaustion in defendant's answer, stayed proceedings, all proceedings, related to the statute of limitations piece. As for the sexual abuse claim, I think that that's a little bit more complicated as to whether it falls within the statute of limitations. And that's for a couple reasons. Number one, when he voluntarily dismissed his lawsuit that was substantially similar, defendants relied on the same improper basis for asserting exhaustion as to the sexual abuse claim. They said that he didn't informally attempt to resolve the lawsuit. That's not only contrary to their own policies, but also to federal law. The Prison Rape Elimination Act is clear. Prisoner can't be required to informally resolve an incident of sexual abuse. So when he was denied counsel in that case and then moved to just voluntarily withdraw that case, you know, there's at least some sort of equitable tolling arguments that there was a basis outside of his control that caused him to dismiss that claim. Yeah, Ms. Dill, I think you make a fair point on the handling of the sexual abuse claim, just taking that in isolation. What I wonder about, though, is was that, is the argument you're making to us on that, was that presented to the district court? And if so, where? The specific arguments we elaborated on appeal, but the argument that he didn't, that remedies were not available to him for his sexual abuse claim was made in conjunction with all of his claims. With respect to the segregation, with respect to the diminished mental capacity on the IQ? That's correct. Okay, but the, as I understand the department's regulations here, an allegation of sexual abuse can follow a different track when it comes to administrative exhaustion. Time periods are different and that informal resolution requirement is lifted, correct? That way. But they responded to him categorically. You failed to exhaust, right? That's correct. And so it seems important, though, that because we're reviewing what the district court did, that that exact argument had been presented to the district court. Sure. So a couple of points, Your Honor. The first is that this court and the Supreme Court have said time and time again that where an argument is preserved, which he did, defendants don't contest that he raised an availability argument as to the sexual abuse claim. They just say these specific arguments about how they were unavailable were forfeited. But this court has said that, you know, especially where a litigant is proceeding pro se, a court, once they have the benefit of counsel, then they're able to expand upon those arguments in the court. And just in terms of the equities here, to allow the defendants to both benefit from their own blatant violation of their own rules and federal law, and then that was sanctioned by the district court, is incredibly unjust. And, you know, we would just say that this court should find that as for the forfeiture, he didn't forfeit that claim. And this court also has said in cases where a prisoner or a pro se litigant is proceeding on their own and it's the fault of defendants that they didn't raise the exact arguments that they're now raising on appeal, that that's a basis to allow the expansion of arguments on appeal, as long as the underlying argument has been satisfactorily preserved. And again, defendants don't argue that he raised an availability argument as to the sexual abuse claim. They just say his arguments that they thwarted him from using the grievance process apply. But, you know, this court doesn't necessarily even need to reach that question if it agrees with us that his mental capacity made it impossible for him to navigate the system, because then his sexual abuse claim would be captured with the other claims in our primary position, which is that, you know, his IQ plus his documented inability to navigate the process, plus him raising to the prison that he didn't know how to navigate the process, plus defendants' own rules saying that they won't be available to folks with mental impairments is enough as a matter of law that remedies were not available. Ms. Dillon, if we agree with you that these remedies were not available to a reasonable prisoner in Mr. Smallwood's situation, that is, with his mental limitations, what's the remedy for that going forward? Does the state have to have different tracks, different sets of procedures for different prisoners with different mental capacities? So it would be on the prison to figure out precisely how to make remedies available to everyone, but there's not even... Give us a hint. What do you think? At minimum, holding an oral orientation to the grievance process at which prisoners are able to identify whether or not they're able to understand the process. Generally in exhaustion cases you at least see a verbal orientation to the grievance process, as well as perhaps some signing of a form saying, I understand this process, I know where I can get help. But in this case, defendants haven't introduced anything into the evidence except for saying that they give prisoners a manual. And we're not even sure that Mr. Smallwood was given the manual in this case. He entered the facility nearly two decades ago. The evidence in the record doesn't show that the prison took any steps to try to make remedies available. Another potential way would be... Your response makes me worry that prisoners might begin to manipulate claims of low IQ or mental impairment. Do you have any thoughts about what the practical implications are here? I think that this court has said time and time again that exhaustion is a fact-specific analysis. And at the district court, courts are well-equipped to handle questions of fact on exhaustion matters. And if a court is worried about potential gamesmanship, then that would be something that a district court could hold a hearing on. But in this case, what makes a case about potential gamesmanship hard is what makes our case easy. There's ample evidence that Mr. Smallwood could not understand the process. And also note that an IQ on the order of 75 is extraordinarily low. And he has evidence that his IQ is that low. And he also has never been able to complete the system. And he also told the prison precisely why, that he was incompetent to understanding the procedures. I don't want to prolong this, but I kind of have a similar question on the limiting aspects of this. And that is, we can all agree, can't we? I think everyone agrees the defendant bears the burden here on the exhaustion that way. And if you would prevail here, would there effectively be a duty imposed upon the department to confirm the capacity, the mental capacity of the inmate to have navigated the exhaustion process? I understand your fact pattern, right? But somebody else is going to come back and say, well, I don't know. I have no idea what my IQ is. I've never been tested. But I never got through. I didn't even finish seventh grade. I can't really read and write very well, et cetera. I mean, you know this from your experience. The possibilities are numerous. Is the upshot of your position, is the kind of takeaway from your position that it would actually be part of the defendant's affirmative burden? I think that the burden does rest with defendants, too, especially where they've developed systems that they explicitly recognize are not available. Because the answer you gave earlier about, well, let's beef up the handbook and let's include some training. If they lack the intellectual capacity, I don't know what beefing up the handbook and expanding the training would do. They lack the ability to navigate it. Sure. And there's other things that the prison could do to make remedies available. And that would be to appoint specific people who are there to help prisoners navigate the system. But at the end of the day, defendants have recognized that their system is not going to be available to folks with mental impairments. It's in their handbook that there have to be mechanisms in place. And in this situation, there isn't a shred of evidence that the prison took any steps to ensure that a person in Mr. Smallwood's circumstances would be able to understand the process. And the implication is simply that they're not going to be able to invoke exhaustion as an affirmative defense against potentially a small subset of folks who actually have the evidence that they can't navigate the process because of their procedure. Thank you. Thank you. All right. Ms. Holmes? Yeah? Good morning. May it please the court. The court should affirm the district court's grant of summary judgment for two reasons. The first is that Mr. Smallwood failed to exhaust available administrative remedies. Smallwood already made use of the grievance process many times before this. In fact, in response, all he showed that he has an IQ somewhere around 75. Excuse me. Is filing a grievance and then not following up really a correct use of the grievance process? Isn't that what was going on here? I'm sorry, Your Honor. Could you repeat your question? Like what you just said and your brief, both state that he correctly utilized the offender grievance process on multiple occasions. But is filing a grievance and then not following up on that grievance really a correct use of the process? Not knowing how to follow up? Sure, Your Honor. Well, the record that we're citing shows that Mr. Smallwood before this 2017 alleged incident actually formally filed multiple grievances correctly. Mr. Smallwood is presenting evidence of other grievances that were returned to him because they weren't properly filed. But there's plenty of evidence in the record that shows before this situation he was able to properly reach step one of the process. Don't those show lots of different handwriting? I'm sorry? Don't those multiple grievances he filed before show lots of different handwriting? Yes, Your Honor. That's what it looks like. Not an expert, but I would infer from that that he was getting help from other prisoners. Yes, Your Honor. So how's he supposed to get that kind of help while he's in segregation? Sure, Your Honor. As to his argument that he was segregated at the time, he in fact did file a formal grievance nonetheless, showing he had... He did, and it was rejected. And it was rejected, and it was returned to him with the return of grievance form that gave him specific instructions on how to remedy the problem and properly file, but Mr. Smallwood never responded to that return. He was in segregation, and I understand there are issues there, but let me follow up on that, on what he did file in a timely way. First of all, do we have agreement that it was mishandled by the prison because of the insistence on informal resolution of a claim of sexual assault? Yes, Your Honor. This is a point that was raised on appeal. Reading the grievance process, it does say that there is no requirement that you present evidence of an informal resolution or an attempt at resolution, and you're right. That wasn't made clear at this point in the process. In other words, the prison failed to follow its own procedure, correct? I think that is fair to say based on the record. I agree. Okay. Second, it's not clear to me exactly what was wrong with the original grievance, even if we assume an informal effort is required, given the references to, quote, contacted Sergeant Dinkins and Officer Williams. Why is that not sufficient to have provided at least some indication of an attempt at informal resolution, despite all the obstacles he was facing? Sure, Your Honor. Well, in the grievance process, it gives some examples of what is evidence of making this an informal resolution attempt, such as a request for an interview or something of that nature. And it's unclear what Mr. Smallwood did except his own assertion that he attempted to contact someone. And what exactly is required for informal resolution? Sure. In the grievance process that's in the record, again, it does give some examples of a request to interview with the staff member, some sort of correspondence, some written correspondence, something of that nature, attempting to resolve the problem before filing the grievance. And in this case, again, he didn't provide that information. He didn't even respond at all to the return of grievance that did give him specific instructions as to what was missing from his grievance. And whether he's ever completed the process, as Mr. Smallwood describes it, meaning fully exhausted his administrative remedies, is not relevant here. First, we're talking about the first step of the process, filing the formal grievance, not about the appeals that would follow. Second, I would seem to turn the PLRA's exhaustion requirement on its head a little bit to say that evidence that a prisoner is not fully exhausted administrative remedies is itself evidence that that remedy was unavailable to him. Do you agree, Ms. Holmes, that the standard under Ross against Blake is whether the procedures were knowable by an ordinary prisoner in the plaintiff's situation? Yes, Your Honor, I agree. Thank you. Yes. Okay. Let me tell you what's hard for me to understand, and it's this. Why, at a minimum, the grievance procedure isn't written with plain language and at a low-level grade level? Microsoft Word, the program you used to prepare your brief, has had the ability to provide the flush Kincaid grade level for at least a dozen years. And I assume the Attorney General's Office surely has lawyers who know how to write precisely in plain English. Do you really think it would be—okay, would it be fair for a court to consider the availability of these sorts of tools and resources in considering whether a prison system has tried to make the grievance process accessible? For example, help me with this sentence from the Indiana Department of Correction Grievance or unavailable remedy, except that a grievance shall be rejected if the offender seeks a remedy to a matter that is inappropriate to the offender grievance process. Do you think that's understandable to the average prisoner? In other words, what does it mean to be inappropriate to the offender grievance process? Right, Your Honor, I take your point. It can be that sentence in particular. I see why it might be a little hard to know exactly what everything means. I would say that in this situation, Mr. Smallwood hasn't made any sort of connection between his IQ of 75 and what he actually was capable of doing and capable of understanding. In light of the evidence that the defendants brought that he had in fact used the grievance process multiple times before this filing, it was important for him to then demonstrate more than just an IQ number, but rather what significance that has to his ability to understand and use the grievance process in light of the evidence that the defendants put forward showing that he had, in fact, been able to use the grievance process before this. Does the record tell? I'm sorry, Judge Romer. Go ahead. No. All I was going to say was he's tried 17 times. He's never successfully exhausted. Sure, Your Honor. And again, I would just go back to my point that it's not the rule that a failure to have exhausted your administrative remedies isn't evidence that they were unavailable to you. That isn't the rule in this situation. And again, what's relevant is the first step, which he has demonstrated evidence of. There's a lot of reasons why a prisoner might not reach the appeal to the warden stage or the final appeal to the grievance manager, and none of which we have any reason to understand why he didn't do those in these other grievances that he had already filed based on the record before us. Judge Scudder. Does the record tell us whether the department provides periodic guidance to the prisoners on how to navigate these common pitfalls that they experience? I'm not saying Constitution requires that. Maybe the department would choose to do that as a matter of its discretion. But does the record tell us that periodically, yeah, they hold sessions and they talk people through, here are the common mistakes. We see this over and over and over again. Here's how to avoid them. Sure. No, Your Honor. You're right. The record doesn't show additional trainings. But we do have the grievance process. We do know that, and Smaller doesn't dispute that the grievance process was given to him upon his entry. The policy says that as well. He doesn't dispute that it remained accessible to him. I know, but the process in the handbook, it doesn't inspire a lot of confidence when he writes on his piece of paper, sexual abuse, and sexual abuse should travel a different path. And it comes back here and telling him you haven't exhausted, because you haven't tried step one. He's not even required to do the informal on an allegation. Yes. So I don't know how far the manual and the initial training gets you. Sure. If I may respond, I see my time's run out. I understood, Your Honor. It is unfortunate that, let me rephrase, if that conflict of the rules is the reason that Mr. Smallwood didn't respond to that return of grievance, he didn't raise that, he didn't make any response at the time, he didn't raise that in the district court, one might have expected that he would have raised it. He was pro se in the district court? Yes, Your Honor. We ask that the court affirm. Thank you. Thank you very much. All right. Ms. Dillon, you have, you asked for two minutes, you have your two minutes. Thank you, Your Honors. Just a couple quick points. The first is, I believe the evidence that opposing counsel is referring to that Mr. Smallwood had made it to the first step can be found at document 46-2 at 1 to 3. And what you'll note is over 19 of the 21 attempts they say he successfully filed a settlement at that time. And the three that are in the record show that he didn't attach any evidence of an informal resolution, so it's unclear why they proceeded. The second point I'd like to make is, as Judge Roebner suggests, the cure for unavailability here is to make the system accessible. That could be through plain language manuals, it could be through oral orientation, it could be through periodic updates on how to use the system. And if they choose not to take those steps, that's the Indiana Department of Corrections prerogative, but what they can't do is then assert an exhaustion defense against folks who have a demonstrated inability to navigate the system. And finally, I'll just note that Mr. Smallwood's got an incredibly strong argument that his sexual abuse claim should move forward anyway. There's reason to remand for the statute of limitations issue, so this case should proceed anyway, and exhaustion shouldn't be a barrier. We ask this Court to reverse and remand. Thank you both very, very much, and case is taken under advisement.